237 N.J. Super. 47 (1989)
566 A.2d 1164
BADRI SHAYEGAN AND ROBIN WINKLER, AS EXECUTORS OF THE ESTATE OF ALI SHAYEGAN, DECEASED, PLAINTIFFS-RESPONDENTS,
v.
JOHN R. BALDWIN, DIRECTOR DIVISION OF TAXATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 1988.
Decided May 2, 1989.
Before Judges SHEBELL, GRUCCIO and LANDAU.
Herbert K. Glickman, Deputy Attorney General, argued the cause for appellant Director, Division of Taxation (Cary Edwards, Attorney General of New Jersey, attorney; James J. Ciancia, of counsel).
*48 Joseph O. Sullivan argued the cause for respondents (Jones and Jones, attorneys).
PER CURIAM.
This is an appeal from a Tax Court decision determining the taxable portion of decedent-husband Ali Shayegan's (Ali) estate. Plaintiffs, Badri Shayegan (Badri) and Robin Winkler (Robin), the executors of the estate contend that certain assets legally titled in the name of decedent were held in trust for the benefit of his wife Badri and as such should not be included in decedent's taxable estate. Defendant, Director of the New Jersey Division of Taxation, contends that the assets in question were gifts from Badri to Ali and as such are includable in the taxable estate.
The facts leading to the present dispute span three decades and several thousand miles yet are largely uncontradicted. Both Badri and Ali were born in Iran. They were married in Iran in 1935 pursuant to an arrangement between Badri's father and Ali in accordance with Iranian custom. Ali immigrated to the United States in 1958 followed thereafter by Badri and their children. The subject of the present litigation is a portfolio of marketable securities valued at $407,059, purchased with monies received from Badri's family in Iran. The transfer of assets was made to Badri in her birth name and she subsequently transferred the assets to Ali. These funds were proceeds of assets left in Iran when the couple immigrated to the United States and a portion of an inheritance received by Badri's mother. The trial court found as a matter of fact that none of the funds in question constituted a belated dowry payment.
Badri's uncontradicted testimony disclosed that she never intended the funds transferred to Ali to be gifts to him but that in keeping with Iranian custom and tradition, Ali exercised exclusive management and control over all their accounts (checking, saving and investment). Badri testified that she was *49 content to allow Ali to make all the investment decisions. She referred, however, to the sums sent to her as "my own money" and testified that Ali acknowledged that the money invested belonged to her. He simply managed the assets with a stock broker who also testified that Ali acknowledged that the invested sums all came from Badri. Whenever Badri requested money, Ali gave it to her.
Defendant assessed a tax of $18,679.79 with respect to the securities portfolio. Plaintiffs paid the tax in full, together with interest, and sued in the Tax Court for recovery of the money paid. There plaintiffs asserted that where a husband makes an investment with his wife's funds a presumption of a resulting trust in wife's favor is created.
Defendant argues that the transfer of funds from the wife to her husband raises a presumption of an inter vivos gift. Therefore, those assets are properly included in the decedent's estate and the tax assessment was correct.
Judge Crabtree, whose opinion is reported at 9 N.J. Tax 452 (1987), found in favor of plaintiffs and awarded judgment in the amount of the tax paid plus interest. We now affirm that decision substantially for the reasoning in the published opinion with the following observations.
The Tax Court correctly took note of the general rule "that a resulting trust will be declared in favor of the one paying the purchase price of property transferred to another unless it is shown that the one paying the price did not so intend." In Re Estate of Rauch, 167 N.J. Super. 497, 500-501 (App.Div. 1979). The Tax Court also properly took into account that a contrary presumption of a gift or advancement arises when certain relationships, such as blood or marriage, exist between the payor and the transferee. The Tax Court next accurately indicated that "the presumption of a gift, where such a [blood or marriage] relationship is present, supersedes the presumption of a resulting trust and casts the burden of proof upon the *50 party attempting to establish the trust." Weisberg v. Koprowski, 17 N.J. 362, 372 (1955).
The Tax Court then considered whether purchases of property by one spouse in the name of the other spouse came within the "certain relationship" transactions which are presumed to result in gifts. The Tax Court correctly noted that "when a husband purchases property in the name of his wife, a gift is presumed."
The Tax Court then utilized a gender-based rule that reversed the presumption when a wife purchased property taking it in her husband's name. Under that rule, a resulting trust is presumed in favor of the wife with respect to that property. The Tax Court made clear that had the sexes been reversed the exact opposite presumption would have been made, i.e., it would be presumed that a gift was made from the husband to the wife rather than a resulting trust.
We are deeply troubled by the survival of such a gender-based rule in this State. While we concede the existence of the rule in New Jersey through the authority cited by the Tax Court, our concern arises from more recent developments at the federal level. In particular, we note the recent United States Supreme Court decision in Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979). There, an Alabama statute exempted women from paying alimony. The Supreme Court discussed gender-based classifications to determine whether the statute was a violation of equal protection.
Ordinarily, we would begin the analysis of the "needy spouse" objective by considering whether sex is a sufficiently "accurate proxy," [citation omitted], for dependency to establish that the gender classification rests "`upon some ground of difference having a fair and substantial relation to the object of the legislation,'" [citation omitted]. Similarly, we would initially approach the "compensation" rationale by asking whether women had in fact been significantly discriminated against in the sphere to which the statute applied a sex-based classification, leaving the sexes "not similarly situated with respect to opportunities" in that sphere, [citation omitted].
But in this case, even if sex were a reliable proxy for need, and even if the institution of marriage did discriminate against women, these factors still would "not adequately justify the salient features of" Alabama's statutory scheme, *51 [citation omitted]. Under the statute, individualized hearings at which the parties' relative financial circumstances are considered already occur. [Citations omitted]. There is no reason, therefore, to use sex as a proxy for need. Needy males could be helped along with needy females with little if any additional burden on the State. In such circumstances, not even an administrative-convenience rationale exists to justify operating by generalization or proxy. [Id. at 440 U.S. 280-281, 99 S.Ct. 1112-1113, 59 L.Ed.2d 320].
We recognize that Orr is not directly applicable since it refers only to legislative actions. However, a common-law rule based upon similar rationale calls its validity into question.
As an intermediate court, our role does not permit the circumventing of existing Supreme Court authority. However, we find other grounds upon which to base our opinion. Here, the result was proper regardless of the test utilized. Even if the gender-neutral test were applied in this case, the result would be the same. The evidence produced at trial was sufficient in both credibility and content to rebut the presumption of gift. Specifically, evidence of Iranian custom regarding inter-spousal separate funds and the uncontradicted testimony of Badri herself and Ali's stock broker sufficiently established the separateness of the accounts in question.
Under the circumstances of this case, it is not necessary to resolve the apparent conflict between Orr and the presumption of resulting trust in transfers from wives to their husbands. The facts in this case are sufficiently unique to require a disposition which is not bridled by standard presumptions or fixed rules. Moreover, we question the continued application of the resulting trust presumption relied upon by the Tax Court in light of Orr. We further recognize that this issue is ripe for re-examination by our Supreme Court. The result here is correct.
Affirmed.